**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

QUANSHANA R. o/b/o J.R.T.D.,

                    Plaintiff,

          v.                                    1:20-CV-1138
                                                    (DJS)
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

**APPEARANCES:**                        **OF COUNSEL:**

ALBANY LAW SCHOOL CLINIC          JOSEPH M. CONNORS, ESQ.
Attorney for Plaintiff
80 New Scotland Avenue
Albany, NY 12208

U.S. SOCIAL SECURITY ADMIN.        CHRISTOPHER L. POTTER, ESQ.
OFFICE OF REG'L GEN. COUNSEL
Attorney for Defendant
J.F.K. Federal Building - Room 625
15 New Sudbury Street
Boston, MA 02203

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM-DECISION AND ORDER[1]

Currently before the Court, in this Social Security action filed on behalf of

Plaintiff J.R.T.D. against the Commissioner of Social Security, are Plaintiff's Motion

for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings.

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  *See* Dkt. No. 6 & General Order 18.

Dkt. Nos. 21, 22 & 25.  For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion for Judgment on the Pleadings is granted.  The Commissioner's decision denying Plaintiff disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A.  Factual Background

Plaintiff is a child, and his mother filed this action on his behalf.  He was born in July 2017, making him just over one month old at the time of his application for supplemental security income ("SSI") benefits, and 21 months old on the date of the ALJ's April 25, 2019 decision.  Dkt. No. 18, Admin. Tr. ("Tr.") at pp. 40, 169.  Plaintiff was born via cesarean section at 38 weeks gestation after a prenatal ultrasound showed ventriculomegaly, a condition in which the ventricles (fluid-filled spaces in the brain) are larger than usual.  Tr. at pp. 47-49, 290.

Approximately two weeks after birth, Plaintiff was diagnosed with hydrocephalus, a build-up of fluid in the ventricles that causes swelling and puts pressure on the brain.  Tr. at pp. 243-245.  He underwent surgery in August 2017 for placement of a ventricular shunt that drains the fluid away from the brain and redistributes it throughout the body.  Tr. at pp. 49-50, 243-245.  The surgery was a success, but hydrocephalus is a chronic condition that requires frequent monitoring by physicians.  Tr. at p. 566.

Plaintiff's mother and aunt each testified that Plaintiff experienced multiple physical and development delays as a result of his impairments.  He received regular physical therapy and had learned how to walk, but his mother reported consistent balance problems and a concern that he would fall.  Tr. at pp. 51-52, 333, 385-392. Although Plaintiff interacted with others and communicated with sound, he had a very limited vocabulary and was being evaluated for speech therapy.  Tr. at pp. 74-75, 291-294, 554.  Plaintiff's mother also observed frequent episodes where plaintiff exhibited a "lazy eye" in one or both eyes, raising concerns that the shunt was not working properly.  Tr. at pp. 192, 279.

### B.  Procedural History

Plaintiff's mother applied for SSI on his behalf on August 22, 2017, alleging a disability onset date of July 12, 2017.  Tr. at pp. 169-174.  Plaintiff's application was initially denied on October 30, 2017, after which his mother timely requested a hearing before an Administrative Law Judge ("ALJ").  Tr. at pp. 79-98.  ALJ Carl Stephan held a hearing on April 2, 2019, at which Plaintiff's mother and aunt both testified.  Tr. at pp. 36-72.  On April 25, 2019, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  Tr. at pp. 11-35.  On July 16, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. at pp. 1-7.

### C.  The ALJ's Decision

In his April 30, 2019 decision, the ALJ made the following findings of fact and conclusions of law.  First, the ALJ found that Plaintiff was a newborn/young infant on August 22, 2017, the date that his SSI application was filed, and was still a newborn/young infant at the time of the ALJ's decision.  Tr. at p. 17.  Next, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date.  *Id.*  The ALJ then found that Plaintiff has the following severe impairments: "intermittent exotropia[2], hydrocephalus, and strabismus."[3]  Tr. at pp. 17-18.  The ALJ then found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  Tr. at pp. 18-19.

At the next step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that functionally equals the severity of the Listings.  Tr. at pp. 19-30.  As part of this analysis, the ALJ considered Plaintiff's limitations in each of six functional domains.  *Id.*  He found that Plaintiff had "less than marked" limitations with regard to (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving and manipulating objects, and (5)

---

[2] Intermittent exotropia is a condition in which there are times when one or both eyes appear misaligned and turned outward.  https://aapos.org/glossary/exotropia

[3] Strabismus is a condition in which one eye is turned in a direction that is different from the other eye. Exotropia is one form of strabismus.  https://my.clevelandclinic.org/health/diseases/15065-strabismus-crossed-eyes

caring for himself.  Tr. at pp. 24-29.  He found that Plaintiff had a marked limitation in health and physical well-being.  Tr. at pp. 29-30.  Because Plaintiff did not have an impairment or combination of impairments that resulted in either marked limitations in two domains of functioning or extreme limitations in one domain of functioning, the ALJ found that Plaintiff was not disabled.  Tr. at p. 30.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability of a Child

To qualify for social security income, a child under the age of eighteen must have "a medically determinable physical or mental impairment which results in marked and severe functional limitations and which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C). The Social Security Regulations provide a three-step sequential analysis to determine whether a child is disabled and therefore eligible for SSI. *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 140 (N.D.N.Y. 2012).

First, the ALJ is to consider whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). Second, the ALJ considers whether the child has a medically determinable impairment that is severe. 20 C.F.R. § 416.924(c). Third, if the ALJ finds a severe impairment, he must then consider whether the impairment medically or functionally equals a disability in the Listings. 20 C.F.R. § 416.924(c)-(d).

There are three separate ways by which a claimant may establish that his impairment is medically equivalent to a listed impairment. 20 C.F.R. § 416.926(b). First, a claimant who has an impairment described in the listed impairments, but "do[es] not exhibit one or more findings specified in the particular listing, or ... [does] exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing," may establish medical equivalence by demonstrating other findings related to his impairment "that are at least of equal medical significance to the required criteria" of the listed impairment. 20 C.F.R. § 416.926(b) (1). Second, a claimant who has an impairment not described in the listed impairments may establish medical equivalence by demonstrating findings related to his impairment that "are at least of equal medical significance" to those of a "closely analogous listed impairment[ ]." 20

C.F.R. § 416.926(b)(2). Third, a claimant who has a combination of impairments, none of which are described in the listed impairments, may establish medical equivalence by demonstrating findings related to his combination of impairments that "are at least of equal medical significance to those of a[n] [analogous] listed impairment. 20 C.F.R. § 416.926(b)(3).

To demonstrate functional equivalence to a disability, the child must exhibit a "marked" limitation in two of six functional domains, or an "extreme" limitation in one functional domains. The domains are 1) the child's ability to acquire and use information, 2) the child's ability to attend and complete tasks, 3) the child's ability to interact and relate with others, 4) the child's ability to move about and manipulate objects, 5) the child's ability to care for himself, and 6) the child's health and physical well-being. 20 C.F.R. § 416.926(b)(1).

A child has a "marked" limitation if the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926(e)(2)(i). An "extreme" limitation exists when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926(e)(3)(i).

### III. ANALYSIS

### A.  The ALJ Adequately Developed the Record Regarding Plaintiff's Speech and Other Developmental Delays

Plaintiff's counsel contends that "no medical source has opined on the implications of medical findings in [plaintiff's] case as they relate to provisions in the Commissioner's listings." Dkt. No. 21 at pp. 19-21.  Counsel further asserts that the ALJ should have ordered one or more consultative examinations of Plaintiff in light of treating neurosurgeon Dr. Matthew Adamo's opinion that a pediatric neurologist may be able to provide a reliable assessment of plaintiff's functional limitations and developmental delays.  *See* Tr. at p. 567.

Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Social Security Act, "the ALJ generally has an affirmative obligation to develop the administrative record" due to the non-adversarial nature of a hearing on disability benefits.  *Burgess v. Astrue,* 537 F.3d 117, 128 (2d Cir. 2008) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)) (citing *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002), *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004), *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)).  "'It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009)).

9

"The ALJ has discretion on a case-by-case basis to determine whether a consultative examination is needed, and is only required to order such an examination where the examination is necessary to resolve a conflict or ambiguity in the record." *Phelps v. Colvin*, 20 F. Supp. 3d 392, 401 (W.D.N.Y. 2014) (citing 20 C.F.R. § 404.1519a(b)(4); *Simon v. Colvin*, 2013 WL 4094612, at *6-7 (W.D.N.Y. Aug. 13, 2013) (finding no psychiatric consultative evaluation needed where substantial evidence existed in the record to support ALJ's conclusion)). "An ALJ is not obligated to order a consultative examination if the facts do not warrant or suggest the need for such an examination." *Phelps v. Colvin*, 20 F. Supp. 3d at 402 (quotation omitted). Conversely, "it is a reversible error for the ALJ to fail to obtain a consultative examination if such an evaluation is necessary for the ALJ to make an informed decision." *Id*. (citing *Falcon v. Apfel*, 88 F. Supp. 2d 87, 90-91 (W.D.N.Y. 2000)).

In his decision, the ALJ marshaled a variety of evidence related to Plaintiff's developmental delays, including medical opinion evidence. Tr. at p. 18-30. State agency medical consultant Dr. S. Gandhi reviewed Plaintiff's medical records as of October 2017 and opined that Plaintiff did not have an impairment that met, medically equaled, or functionally equaled the Listings. Tr. at p. 82. Dr. Gandhi, a pediatrician, also opined that Plaintiff had no limitations in the functional areas of acquiring and using information, attending and completing tasks, interacting and relating with others, or caring for himself, but found "less than marked" limitations in the area of health and

10

physical well-being.  Tr. at pp. 82-83.  The ALJ found this opinion to be "partially persuasive."  Tr. at p. 24.

Plaintiff's counsel challenges both Dr. Gandhi's qualifications and the authenticity of his opinion.  Dkt. No. 21 at 15; *see also* Tr. at p. 41.  However, it is well established that the ALJ had discretion to rely on the non-examining medical consultant's opinion.  *See Leach v. Barnhart* 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such their opinions may constitute substantial evidence if they are consistent with the record as a whole."); *Baszto v. Astrue*, 700 F.Supp.2d 242, 249 (N.D.N.Y. 2010) ("An ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

Given the timing of the state agency consultant's opinion, Dr. Gandhi only had access to Plaintiff's medical records up to the age of three months.  However, the ALJ also considered more recent medical records and opinions that were consistent with the state agency consultant's opinion.  Tr. at 21-24.  Dr. Jena Burgner, who had been Plaintiff's pediatrician for his entire life, provided a March 12, 2019 opinion that pre-dated the ALJ's decision by just over one month.  Tr. at pp. 550-554.  Dr. Burgner opined that Plaintiff's overall symptoms were "currently stable" and that his gross motor delays were showing improvement with physical therapy.  *Id.*  With regard to each of

the functional domains, Dr. Burgner opined that Plaintiff had "no to slight" impairments in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for himself.  She further opined that Plaintiff had "moderate" limitations in the domain of health and physical well-being, due to the ongoing need for regular medical evaluations and physical therapy, coupled with the likely need for speech therapy.  Tr. at p. 554.

The ALJ also had the benefit of the March 29, 2019 opinion of physical therapist Kathleen Ghizzoni, who had worked with Plaintiff on at least a monthly basis since May 16, 2018.  Tr. at pp. 585-589.  Based on that experience, Ms. Ghizzoni opined that Plaintiff had moderate limitations in the functional domain of acquiring and using information.  She explained that Plaintiff was able to follow simple verbal directions and gestures but was not currently using sign or spoken language to communicate.  Tr. at p. 586.  She found no more than slight limitations in the functional domains of attending and completing tasks as well as interacting and relating with others.  Tr. at p. 587.  Ms. Ghizzoni noted that Plaintiff "is an active boy showing appropriate caution during play at his home with adult direction."  *Id.*  She further opined that Plaintiff had "moderate" limitations in the functional domain of moving about and manipulating objects, as the ventricular shunt required continued precautions, and Plaintiff

demonstrated "asymmetry of [muscle] tone and motor control as he learns new motor skills." Tr. at p. 588.

With regard to the functional domain labeled "Caring For Yourself", Ms. Ghizzoni found no to slight limitations, with the obvious recognition that the toddler required assistance with his activities of daily living. *Id.* In the functional domain of health and physical well-being, Ms. Ghizzoni opined that Plaintiff had a moderate level of impairment, in light of the need for ongoing medical treatment. Tr. at p. 589. Overall, Ms. Ghizzoni opined that Plaintiff was "making nice progress with his motor skills" but still required increased time to "learn new skills secondary to motor planning." *Id.*

In addition to the opinion evidence, the ALJ also considered the treatment record, including nine month and eighteen month evaluations, physical therapy session notes, and Plaintiff's Early Intervention Services Plan, along with the speech pathology and physical therapy evaluation notes that formed the basis of that plan. Tr. at pp. 290-296, 302-310, 314-328, 368-372, 385-398.

Two of Plaintiff's treating specialists, urologist Dr. Barry Kogan and neurosurgeon Dr. Matthew Adamo, declined to provide functional assessments. Tr. at pp. 541-545 & 566-570. Dr. Kogan's treatment relationship was limited to hernia surgery and related follow-up appointments. Tr. at pp. 348-349 & 358-359. Dr. Adamo had treated Plaintiff on an ongoing basis, and had most recently evaluated him in February 2019, when he found "no concerning neurological symptoms." Tr. at p. 566.

13

Dr. Adamo suggested that Plaintiff's functional limitations might be best assessed by a pediatric neurologist, but he appeared to qualify this recommendation by noting that evaluation by a neurologist or neuropsychologist was a possibility when Plaintiff reached age four or five. Tr. at pp. 567-568. At the time of the ALJ's decision, Plaintiff was only 21 months old. Tr. at 40.

Based on the record before the ALJ, this court finds that no additional consultative examination was needed to reach an informed decision. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)). Plaintiff's counsel "has not established beyond conclusory assertions that the record was insufficient for the ALJ to make his determination." *Kaliegh O. on behalf of S.S.T. v. Berryhill*, 2018 WL 4054098, at *9 (N.D.N.Y. Aug. 24, 2018) (internal citation omitted).

**B. The ALJ's Step Two Determination Was Supported by Substantial Evidence**

At step two of the sequential review process, the ALJ must consider whether the claimant had a medically determinable "severe" impairment or "severe" combination of impairments. An impairment or combination is "severe" if it imposes more than minimal functional limitations. 20 C.F.R. § 416.924(c). Still, courts have held that

14

erroneously failing to find an impairment is severe at step two is harmless provided the ALJ finds that the child has at least one other severe impairment and thoroughly discusses the record evidence in connection with the functional equivalence domain analysis at step three. *Dowah A. v. Kijakazi*, 2021 WL 4397893, at \*6 (W.D.N.Y. Sept. 27, 2021) (citation omitted).

Plaintiff argues that the ALJ erred because his decision "included no specific findings on whether" certain other diagnosed medical impairments were severe, namely: ventriculomegaly, right lateral ventricular cyst, right lateral macrocephaly, unspecified head injury, jaundice, delays in developmental milestones in speech and walking, gross motor skills impairment, suboptimal growth impairment, and autism. Dkt. No. 21 at p. 21-22. As the Commissioner correctly asserts, the mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. *See* 20 C.F.R. § 416.924(c); *Williams v. Bowen*, 859 F.2d at 259 (a diagnosis is insufficient to establish listing-level severity in a child disability case). The sole record reference to autism would not even rise to the level of diagnosis, as it comes from a physical therapy note summarizing plaintiff's mother's reaction to an off-hand comment by an unidentified resident physician. Tr. at p. 385.

Moreover, the ALJ discussed plaintiff's walking, gross motor skills, speech, and developmental delays at length in his decision. Therefore, any error in failing to identify a particular additional severe impairment affecting these functions is harmless.

**C. The ALJ's Determination that Plaintiff's Impairments Were Not Medically Equivalent to a Listed Impairment Was Supported by Substantial Evidence**

The Commissioner's Listings are a series of impairments describing physical and mental conditions, indexed according to the body system affected. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Listed impairments are presumptively disabling. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d). "The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing." *Henry v. Astrue*, 32 F. Supp. 3d 170, 182 (N.D.N.Y. 2012) (citing *Naegele v. Barnhart*, 433 F.Supp.2d 319, 324 (W.D.N.Y. 2006)).

A child's impairment meets a listed condition only when it satisfies all of the criteria of the Listing.  20 C.F.R. § 416.925(c)(3) and (d).  A child's impairment medically equals a listed condition when it is at least equal in severity and duration to the criteria of a listed condition.  20 C.F.R. § 416.926(a).  Plaintiff's counsel contends that Plaintiff's impairments are medically equivalent to a number of Listings: 2.09 (Organic Loss of Speech), 111.09 (Communication Impairment), 111.04 (Vascular Insult to Brain), and 112.14 (Development Disorders).  Dkt. No. 21, at 22-25.  The Court will address each of those arguments in turn.

Listing 2.09 requires a finding of disability for an individual with "loss of speech due to any cause, with inability to produce by any means speech that can be heard, understood, or sustained." 20 C.F.R., Part 404, Subpt. P, App. 1, § 2.09.  Listing 2.09 is an adult listing, and the Commissioner's regulations generally require that the

childhood listings must be used first in evaluating disability for a person under age 18. 20 C.F.R. § 416.925(b)(2)(i). However, if the criteria in the child listings do not apply, the criteria in the adult listings may be used. *Id.*

Social Security Ruling (SSR) 98–1p specifically permits the application of adult Listing 2.09 to children under certain circumstances. Under that ruling, medical equality will be found if a child has a "marked" limitation in both speech and cognitive function or has an "extreme" limitation in either. *Lowery v. Comm'r of Soc. Sec.*, 55 Fed. Appx. 333, 336 (6th Cir. 2003) (summarizing SSR 98-1p, *Title XVI: Determining Medical Equivalence in Childhood Disability Claims When a Child Has Marked Limitations in Cognition and Speech*, 63 Fed. Reg. 15248, 15250 (Mar. 30, 1998)). For a child in Plaintiff's age range (between birth and two years old), a marked limitation in speech will be found if "sound production other than crying (e.g., cooing, babbling, jargoning) occurs infrequently; the child is unusually quiet" or there is "limited or otherwise abnormal variation in pitch, intensity, and sound production." *See* SSR 98-1, 1998 WL 138259. SSR 98-1 further provides that a child has an extreme limitation in speech " if a criterion for marked limitation is met" and "consonant-vowel repertoire is not sufficient to support the development of expressive language." *Id.*

Although the ALJ did not expressly state that he considered Listing 2.09, he did consider, at length, the underlying medical criteria that Plaintiff would have had to satisfy - and that Plaintiff claims having met - under that listing. *Maryellen D. v.*

*Berryhill*, 2018 WL 4627664, at \*10 (N.D.N.Y. Sept. 27, 2018) (given the ALJ's citation of the relevant evidence, a court may "reasonably infer" that the ALJ found a particular Listing inapplicable to Plaintiff).  The ALJ marshaled an assortment of evidence to support a finding that Plaintiff did not have a marked or extreme limitation in the area of speech.  Tr. at pp. 18, 22.  A March 28, 2018 evaluation found that Plaintiff had a "standard score of 109" in the domain of communication, which encompasses talking and understanding language.  Tr. at p. 303.  The evaluator found his score to indicate age-appropriate functioning.  *Id.*  His expressive language scores were within the average range.  Tr. at p. 292.  During the evaluation, Plaintiff "searched for objects that were out of sight, looked when his name was called, produced a series of consonant-vowel sounds, and enjoys games like peek-a-boo."  *Id.*  The evaluator observed that Plaintiff "squealed with excitement," smiled, and laughed during play and "express[ed] affection towards family members."  Tr. at p. 291.  He produced "soft cooing sounds (i.e., ah, eh)" in response to the evaluators, "babbles a series of same consonant vowel syllables (i.e., yaya, adada) and engaged in simple vocal turn taking."  Tr. at p. 292.  Plaintiff also "makes non-crying noises such as guttural and soft throaty sounds while lying on his back and protests with purposeful body movements and vocalizations."  *Id.*

By February 2019, Plaintiff had progressed to being able to say "dada."  Tr. at pp. 59, 368.  In March 2019, treating physician Dr. Burgner opined that Plaintiff had at most a slight impairment in the functional domain of acquiring and using information,

which includes the ability to speak and express ideas.  Tr. at p. 551.  Plaintiff's physical

therapist did not observe marked or extreme limitations in regard to speech.  Tr. at p.

385.  Her therapy notes show that Plaintiff made eye contact and was "able to imitate

[the] therapist in some expressive language." *Id.*

The ALJ relied on this same evidence in his determination that Plaintiff's

impairments were not medically equivalent to Listing 111.09.  Tr. at pp. 18-19.  Listing

111.09 addresses communication impairments associated with a documented

neurological disorder.  20 C.F.R. Pt. 404, Subpart P, App. 1, § 111.09.  The ALJ

considered the relevant evidence at length:

> As for listing 111.09, the record revealed that the claimant did not have a
> communication impairment with an associated neurological disorder and
> a documented speech deficit that significantly affects the clarity and
> content of the speech, or documented comprehension deficit resulting in
> ineffective verbal communication for age, or impairment of hearing as
> described under the criteria in 102.10 or 102.11.  Although the claimant
> had some difficulties expressing himself and is expected to be evaluated
> for speech therapy services, in the Individualized Family Service Plan
> (IFSP) Communication domain, the claimant earned a standard score of
> 109, which indicates age-appropriate functioning.   Particularly, the
> Communication domain assessed the claimant's ability to talk and
> understand language   The evaluation revealed that the claimant could
> search for objects that were out of sight, look when his name was called,
> produce a series of consonant-vowel syllables, and enjoy games like peek-
> a-boo.  Moreover, Kathleen Ghizzoni, PT, DPT did not observe marked
> or extreme limitations in this area.   In fact, treatment notes in 2019
> revealed that the claimant could say "dada," which is an improvement
> from earlier reports by [Plaintiff's mother] in which she indicated that the
> claimant could not say simple words such as "mama" or "dada."

Tr. at pp. 18-19 (internal citations omitted).  Accordingly, the ALJ identified

substantial evidence to support his analysis of Listing 111.09.

Listing 111.04 is characterized by disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, persisting for at least 3 consecutive months after the insult. 20 C.F.R. Part 404, Subpt. P, App. 1 § 111.04.

> For children who are not yet able to balance, stand up, or walk independently, we consider their function based on assessments of limitations in the ability to perform comparable age-appropriate activities with the lower and upper extremities, given normal developmental milestones. For such children, an extreme level of limitation means developmental milestones at less than one-half of the child's chronological age.

20 C.F.R. Part 404, Subpt. P, App. 1 § 111.00(D)(3).

Although the ALJ did not reference Listing 111.04, he did discuss Plaintiff's motor function at length, and the court can again infer that the ALJ concluded that this Listing did not apply. *Maryellen D. v. Berryhill*, 2018 WL 4627664, at *10. He cited August 2018 and October 2018 treatment notes showing that Plaintiff had normal movement of all extremities with no joint swelling and normal muscle strength. Tr. at pp. 21, 334, 340. In August 2018, just after his first birthday, Plaintiff was able to walk while holding on to furniture. Tr. at p. 333. By January 2019, physical therapy notes describe Plaintiff as "doing very well, he is walking all over, he is climbing up and down stairs…" Tr. at p. 386. During these activities, Plaintiff's mother, quite understandably,

kept close supervision over her son and expressed concerns about his balance and potential falls.  Tr. at pp. 52, 71, 386.  However, there is no record evidence to refute the February 2018 evaluation finding that Plaintiff had "age appropriate functioning" with regard to his physical development, or that Plaintiff had improving in his ability to walk and climb stairs.  Tr. at p. 303.

Listing 112.14 addresses Developmental Disorders in Infants and Toddlers, and is satisfied when a child meets both the A and B criteria of the Listing, namely:

A.  Medical Documentation of one or both of the following:

1.  A delay or deficit in the development of age-appropriate skills; or
2.  A loss of previously acquired skills;

And

B.  Extreme limitation of one, or marked limitation of two, of the following developmental abilities:

1.  Plan and control motor movement;
2.  Learn and remember;
3.  Interact with others;
4.  Regulate physiological functions, attention, emotion, and behavior.

20 C.F.R. Pt. 404, Subpart P, App. 1, § 112.14.

As described above, multiple medical and other treatment sources found Plaintiff to have age appropriate functioning, and at most moderate functional limitations, as he grew older and progressed in his physical therapy.  Tr. at pp. 303, 551-554, 586-589. The ALJ summarized these medical findings in his consideration of Listing 112.14, and

therefore his determination that Plaintiff did not satisfy the Listing criteria was supported by substantial evidence.

### D. The ALJ's Determination that Plaintiff Had Marked, But Not Extreme, Limitations in the Domain of Physical Health and Well-being Was Supported by Substantial Evidence

The ALJ found that Plaintiff had a marked limitation in the functional domain of health and physical well-being.  Tr. at p. 30.  Plaintiff's counsel contends that the ALJ should have found an extreme limitation in this domain, and by doing so, found Plaintiff to be disabled.  Dkt. No. 21 at pp. 25-26.

The domain of health and physical well-being involves the "cumulative physical effects of physical or mental impairments and their associated treatments or therapies on a child's functioning." 20 C.F.R. § 416.926a.  A child will be considered to have an extreme limitation in this domain if he is frequently ill because of his impairments or has frequent exacerbations of his impairments that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation.  20 C.F.R. § 416.926a(e)(3)(iv).  However, if a child has episodes of illness or exacerbations that would be rated extreme, his impairments will also typically meet or medically equal a Listing as well.  *Id.*

In reaching his determination, the ALJ noted that Plaintiff lives with a chronic condition that requires frequent monitoring.  Tr. at pp. 30, 554, 566, 589.  However, the ALJ also noted the stable nature of Plaintiff's condition, as described by treating

neurosurgeon Dr. Adamo.  Tr. at pp. 30, 566.  Plaintiff was not taking any medications for his condition beyond a multivitamin.  *Id.*  Despite physical progress and documented overall improvement, the ALJ recognized that Plaintiff still received monthly physical therapy and was going to be evaluated for speech therapy.  Tr. at 30.  This ongoing need for care persuaded the ALJ to find marked limitations with regard to health and physical well-being.  *Id.*

In arguing that Plaintiff actually had extreme limitations in this domain, Plaintiff's counsel emphasizes Plaintiff's forty-four medical appointments between his birth and February 8, 2019.  Dkt. No. 21 at p. 26.  While the frequency of these appointments assuredly presents a burden on Plaintiff and his family, the record relied upon the ALJ showed that Plaintiff's initial surgery to install the shunt was a success, and there were no documented complications or exacerbation of Plaintiff's symptoms afterward.  Tr. at pp. 258-259, 318, 550, 566, 589.  Indeed, multiple treating sources described Plaintiff as "stable."  Tr. 550, 566.  Therefore, the number of Plaintiff's doctor visits, without more, does not establish that Plaintiff has an extreme limitation in the domain of health and physical well-being.  *See*, *e.g.*, *Sierra G., on behalf of D.D.M.*, 2019 WL 6699416, at *5 (N.D. Ill. December 9, 2019) (substantial evidence supported ALJ's finding of less than marked limitations in health and physical well-being where there is no evidence that the frequency of plaintiff's  doctors' visits and therapy appointments adversely affected his health and physical well-being); *Carroll ex rel.*

*Quinn v. Barnhart*, 2005 WL 1041337, at *4 (D. Kan. Mar. 22, 2005) (ALJ had substantial evidence to support finding of less than marked limitations in health and physical well-being despite plaintiff requiring two surgeries before his third birthday and regular physical therapy).  Accordingly, the ALJ had substantial evidence to support his determination that Plaintiff had no more than marked limitations in the functional domain of health and physical well-being.

Plaintiff's counsel has expressly limited its challenge to the ALJ's findings of functional equivalence to the domain of health and physical well-being. Dkt. No. 21 at p. 25-26, Dkt. No. 25 at p. 2.  Therefore, this court will only briefly address the ALJ's determination with regard to the other functional equivalence domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving and manipulating objects, and caring for himself.  20 C.F.R. § 416.926(b)(1).  With respect to each of these domains, the ALJ set forth the regulatory criteria along with the relevant objective and opinion evidence, as well as the testimony of Plaintiff's mother and his aunt.  Tr. at pp. 19, 24-30.  In doing so, the ALJ  utilized the "whole child approach" to "evaluate how appropriately, effectively and independently [Plaintiff's] functions compared to children of the same age who do not have impairments."  SSR 09-02p, *Determining Childhood Disability-Documenting a Child's Impairment-Related Limitation*s,  2009 WL 396032, at *1 (February 17, 2009); *see also* 20 C.F.R. § 416.926a.  Based upon a review of the ALJ's decision and its consistency

with the longitudinal record, this Court finds that the ALJ had substantial evidence to support his determination that Plaintiff had "less than marked" impairment in all of the functional domains, with the exception of health and physical well-being.

In challenging the ALJ's decision, much of Plaintiff's argument is a recitation of the evidence of record.  The Court declines any invitation by Plaintiff to reweigh that evidence.  *See Warren v. Comm'r of Soc. Sec.*, 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, ... nor will it determine whether [the applicant] actually was disabled.  [Rather,] [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'"), *report and recommendation adopted*, 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016) (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) ); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing C*arroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).  Thus, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of a listed impairment.  *See Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that it is not the role of a court to "re-weigh evidence" because "a reviewing court 'defer[s] to the Commissioner's resolution of conflicting

evidence'" where that resolution is supported by substantial evidence) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012)).

### E.  The ALJ's Exclusion of One of Plaintiff's Representatives from the Hearing Room Was Not Prejudicial Error

Although a claimant does not have a constitutional right to counsel at a Social Security disability hearing, he or she does have a statutory and regulatory right to be represented should he or she choose to obtain counsel.  42 U.S.C. § 406; 20 C.F.R. § 416.1505.  Plaintiff's counsel contends that the ALJ violated this statutory and regulatory right to counsel when he excluded one of Plaintiff's representatives from the hearing room.  Dkt. No. 21 at p. 26.  Plaintiff has been represented in this matter by two law students operating under a student practice order, along with a supervising attorney. Tr. at p. 164.

The hearing transcript indicates that only one of the law student representatives was present during the actual hearing, along with the supervising attorney and two witnesses.  *Id.* at pp. 38-40.  The ALJ's decision to exclude the additional student representative is not reflected in the transcript, but the Commissioner does not dispute that it occurred.  Dkt. No. 22 at p. 18-19.  Still, this transcript omission prevents the Court from determining the reasoning, if any, for the ALJ's decision, as well as any objections raised by Plaintiff's counsel.

The lack of a relevant transcript does not prevent the Court from denying Plaintiff's request for remand on these grounds.  Plaintiff's counsel contends that the

ALJ violated a portion of HALLEX I-1-1-10(D) that allows a claimant to have multiple representatives.  Dkt. No. 21 at p. 26.  Mere violation of a HALLEX provision does not require remand.   "The HALLEX is a manual that provides the Social Security Administration with a set of guidelines and procedures" but "district courts within the Second Circuit have found that 'HALLEX policies are not regulations and therefore not deserving of controlling weight.'"  *Dority v. Comm'r of Soc. Sec.*, 2015 WL 5919947, at *5 (N.D.N.Y. Oct. 9, 2015) (quoting *Edwards v. Astrue*, 2011 WL 3490024, at *6 (D. Conn. Aug. 10, 2011)) (collecting cases); *see also Harper v. Comm'r of Soc. Sec.*, 2010 WL 5477758 at *4, (E.D.N.Y. Dec. 30, 2010) (noting that because HALLEX is "simply a set of internal guidelines for the SSA, not regulations promulgated by the Commissioner," a "failure to follow procedures outlined in HALLEX …  does not constitute legal error").

The more relevant inquiry is whether the ALJ's purported refusal to allow an additional representative at the hearing resulted in prejudice to the Plaintiff.  *See Grant v. Astrue*, 2008 WL 2986393, at *5 (N.D.N.Y. July 31, 2008) ("… the lack of counsel, in and of itself, is not a sufficient ground upon which remand or reversal may be based . . . Plaintiff must show prejudice or unfairness in the proceeding.") (collecting cases). Plaintiff's counsel argues that the excluded representative had planned to question

Plaintiff's mother at the hearing due to their "close rapport[4]," and had a keen or even "expert" perspective on the relevant issues, but has not demonstrated any prejudice or unfairness that resulted in the hearing itself.  Dkt. No. 21 at p. 26.  Both Plaintiff's mother and his aunt provided extensive hearing testimony on Plaintiff's medical history and their experience as his caregivers, under questioning from the ALJ and Plaintiff's representatives.  Tr. at pp. 40-76.  The representatives in the room appropriately handled both procedural and factual inquiries from the ALJ, and persuaded the ALJ to reopen the record for supplemental medical evidence.  *Id.* at pp. 40-43, 76-77.

Accordingly, even if the Court were to find that the ALJ erred in excluding an additional representative, such error did not result in prejudice or unfairness, and remand is unwarranted on this ground.

### IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 21) is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 22) is **GRANTED**; and it is further

---

[4] Though not a basis for remand, the Court notes that the exclusion, particularly given the lack of explanation, of a law school student who had prepared to question a key witness is most unfortunate both for Plaintiff and for the student who was denied a significant practical opportunity.

28

**ORDERED,** that the decision of the Commissioner denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED,** that Plaintiff's Complaint is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated: February 15, 2022
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge